```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
MARGURITE PASQUALE,
```

        Plaintiff,        **MEMORANDUM AND ORDER**
                                                             16-CV-02575 (FB)

  -against-

```
NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                Defendant.

---------------------------------------------------x
```

*Appearances:*
*For the Plaintiff:*                                  *For the Defendant:*
HAROLD SKOVRONSKY                    BRIDGET M. ROHDE
1810 Avenue N                                         Acting United States Attorney
Brooklyn, New York 11230              Eastern District of New York
                                                              271 Cadman Plaza East, 7th Floor
                                                              Brooklyn, New York 11201

                                                              By:   JOSEPH MARUTOLLO
                                                                         Assistant U.S. Attorney

**BLOCK, Senior District Judge:**

      Margurite Pasquale ("Pasquale"), who formerly worked as a registered nurse, seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability benefits under the Social Security Act. Both parties move for judgment on the pleadings. For the reasons stated below, the Commissioner's motion is denied, Pasquale's motion is granted, and

the case is remanded for the calculation of benefits.

## I.

On June 6, 2013, Pasquale filed an application for Disability Insurance Benefits. She alleged disability, as of March 27, 2013, due to severe chronic back pain, back injury, depression, and anxiety. The Social Security Administration (the "SSA") denied her application, and she had a hearing before an Administrative Law Judge ("ALJ"). In a decision dated October 31, 2014, the ALJ held that Pasquale was not disabled. Applying the familiar five-step evaluation process,[1] the ALJ determined that: (1) Pasquale had not engaged in substantial gainful activity from March 27, 2013, through October 31, 2014, the date of the hearing; (2) her degenerative disc disease of the lumbar spine was a severe impairment, but her depression and anxiety were not; and (3) her impairments did not meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

---

[1] Social Security Administration regulations establish a five-step process for evaluating disability claims. The Commissioner must determine "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience." *McIntyre v. Colvin*, 748 F.3d 146, 150 (2d Cir. 2014) (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)(v)). The burden of proof is on the claimant in the first four steps but shifts to the Commissioner at the fifth step. *Id.* At the fifth step, the Commissioner "need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (citing 20 C.F.R. § 404.1560(c)(2)).

The ALJ then determined that Pasquale had the residual functional capacity ("RFC") to perform sedentary work except that she needed to stand for 5 minutes per hour while remaining on task and she was limited to performing simple and routine tasks. Applying this RFC to the remaining steps, the ALJ determined that (4) Pasquale was unable to perform her past relevant work as a registered nurse, but (5) there were jobs existing in significant numbers in the national economy that Pasquale could perform, namely order clerk, bench hand, and addresser.

The Appeals Council denied Pasquale's request for review, rendering final the ALJ's decision to deny benefits. Pasquale timely sought judicial review.

**II.**

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013).

Here, the ALJ's RFC determination was not supported by substantial evidence. Sedentary work generally involves up to 2 hours of walking or standing and up to 6

3

hours of sitting in an eight-hour workday. *See McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014); SSR 96-9p, 61 Fed. Reg. 34478, 34480 (July 2, 1996). Substantial evidence does not show that Pasquale could perform those functions. The ALJ's conclusion to the contrary was based primarily on his determination that Pasquale's and her treating physicians' statements regarding her functional limitations lacked credibility. However, the ALJ's credibility determinations were not supported by substantial evidence, and the record as a whole shows that Pasquale was not capable of sedentary work. *Id.*

Dr. Alastra, who performed spinal fusion surgery on Pasquale and continued to treat her at follow-up visits, opined that she could lift no more than 10 pounds, could stand or walk with normal breaks for less than 2 hours in an eight-hour work day, could sit for less than 2 hours in an eight-hour work day and needed to periodically alternate between sitting and standing to relieve pain or discomfort. *See* AR at 390-92.[2] Pasquale described similar limitations. *See* AR at 37-38, 184-92. The medical records, which contain extensive documentation of spinal disease and subjective complaints of severe pain, fully supported these functional limitations.

Nonetheless, the ALJ determined that Dr. Alastra's opinion was entitled to "only partial weight," on several grounds, which are all without merit. First, he reasoned that "the claimant appeared to exhibit an intact gait prior to surgery, and . .

---

[2] "AR" refers to the Administrative Record.

4

. only improved since her fusion procedure." *Id.* at 21. However, the ALJ did not cite any medical evidence to suggest that having an "intact gait" was inconsistent with the functional limitations described by Dr. Alastra. "[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, the ALJ cherry-picked statements regarding Pasquale's gait and ignored statements from the same reports demonstrating the severity of her impairment. For example, physical examinations by Dr. Stilwell consistently revealed tenderness and muscle spasms in Pasquale's lumbar spine and pain that radiated down both legs. *Id.* at 271 (treatment notes from May 13, 2013), 274 (from April 8, 2013). An MRI from 2012 showed degenerative spondylosis with minimal disc bulging but "significant pathology" that, according to Dr. Alastra, "likely correlate[d] with her discogenic-like back pain symptoms . . . ." *Id.* at 263. By ignoring the foregoing evidence, the ALJ failed to consider "all of the relevant medical and other evidence" in determining the credibility of Dr. Alastra's opinion. *Genier v. Astrue*, 606 F.3d 46, 50 (2d Cir. 2010) (citing 20 C.F.R. § 404.1545(a)(3)).

Second, the evidence directly contradicted the ALJ's finding that Pasquale's condition "only improved" after surgery. Examinations continued to reveal tenderness and muscle spasms in June 2014, several months after surgery. *Id.* at 356. In the months following surgery, Dr. Alastra reported on several occasions that Pasquale was "backslid[ing]" in her recovery. AR at 351-53. In June, she continued

5

to experience pain and paresthesias,[3] which, according to Dr. Alastra, prevented her from sitting "more than about 20 to 30 minutes at a time." *Id.* at 351. Thus, substantial evidence does not support the ALJ's conclusion that Pasquale's condition "only improved" after surgery.

Third, the ALJ reasoned that Pasquale "appear[ed] capable of engaging in normal activities that require[d] prolonged sitting and at least some walking/standing (driving, travel, childcare, etc.; she appear[ed] to spend much of the day, in excess of 6 hours, in a seated position)." *Id.* However, the ability to do "at least some walking/standing" does not demonstrate the ability to stand for up to two hours per day, as required to perform sedentary work. The ALJ did not cite to the record or provide any basis for concluding that Pasquale spent more than 6 hours per day in a seated position. The Commissioner argues that Pasquale's daily activities of watching television and "hanging around" "presumably involved prolonged sitting." *See* Comm'r's Mem. of Law at 20. But the Commissioner conveniently omits the portion of Pasquale's testimony suggesting that she did those things while lying down: "[H]onestly, I don't do much. I'll watch TV, hang around, lay down in the room, you

---

[3] "Paresthesia refers to a burning or prickling sensation that is usually felt in the hands, arms, legs, or feet, but can also occur in other parts of the body." NIH, National Institute of Neurological Disorders and Stroke, *Paresthesia Information Page*, www.ninds.nih.gov (last visited Oct. 30, 2017)
https://www.ninds.nih.gov/Disorders/All-Disorders/Paresthesia-Information-Page.

know." AR at 37.[4] In any event, the ALJ's assumption that Pasquale performed these activities in a seated position does not constitute substantial evidence that she was capable of performing sedentary work.

Finally, in evaluating Pasquale's credibility, the ALJ did not consider the factors set forth in 20 C.F.R. § 404.1529(c)(3) or explain how he weighed them in making his credibility determination. For example, he did not specifically consider the "location, duration, frequency, and intensity of the claimant's pain," "precipitating or aggravating factors," or the "type, dosage, effectiveness, and side effects of any medication . . . ." 20 C.F.R. § 404.1529(c)(3)(ii)-(iv). Medical reports show that Pasquale consistently characterized her pain as 8/10 on average and 10/10 at maximum, described it as continuous, and stated that work, standing, walking, and bending were aggravating factors. *See, e.g.*, AR at 356-88. The ALJ discredited Pasquale's testimony on the ground that her "clinical presentation with treating sources during the relevant period does not appear to suggest that the claimant was so limited . . . ." AR at 20. In doing so, he failed to recognize that "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone." 20 C.F.R. § 404.1529(c)(3). The ALJ's failure to apply the

---

[4] Pasquale also testified, contrary to the ALJ's statement, that she no longer drove. *See* AR at 33. Moreover, performing some childcare duties and making a one-time trip to Florida to prepare for a relocation does not "truly show[] that [s]he is capable of working." *Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir. 1989) ("When a disabled person gamely chooses to endure pain in order to pursue important goals, it would be a shame to hold this endurance against him in determining benefits unless his conduct truly showed that he is capable of working.").

7

proper standards in determining Pasquale's credibility constitutes legal error.

The ALJ also failed to cite any medical opinion evidence to support his RFC assessment. Before making a determination that a claimant is not disabled, the Commissioner is "responsible for developing [the claimant's] complete medical history, including arranging for a consultative examination(s) if necessary . . . ." 20 C.F.R. § 404.1545(a)(3). Despite the ALJ's conclusion that the uncontradicted opinion of Dr. Alastra, Pasquale's treating physician, was unreliable, the ALJ did not arrange for a consultative examination or develop any specific medical opinion evidence to support his RFC assessment. The ALJ may not "ma[k]e an RFC determination in the absence of supporting expert medical opinion and improperly substitute his own lay opinion for the opinion of a physician." *Henningsen v. Comm'r of Soc. Sec. Admin.*, 111 F. Supp. 3d 250, 271 (E.D.N.Y. 2015) (alterations removed). Given the ALJ's failure to develop medical opinion evidence and the other errors set forth above, the ALJ's decision was not supported by substantial evidence.

Because the record here provides "persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," *Henningsen*, 111 F. Supp. 3d at 272, the case is remanded solely to calculate an award of benefits. *See Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000).

## III.

For the foregoing reasons, the Commissioner's motion is denied, Pasquale's

8

motion is granted, and the case is remanded for calculation of an award of benefits.

        **SO ORDERED.**

                                                /S/ Frederic Block
                                                FREDERIC BLOCK
                                                Senior United States District Judge

Brooklyn, New York
October 31, 2017